# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

RANDALL P. ROBERTSON, )
 )
      Plaintiff, )
 )
v. )    Case No. CIV-12-283-RAW-SPS
 )
CAROLYN W. COLVIN, )
Acting Commissioner of the Social )
Security Administration,[1] )
 )
      Defendant. )

## REPORT AND RECOMMENDATION

The claimant Randall P. Robertson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born January 26, 1952, and was fifty-nine years old at the time of the administrative hearing. (Tr. 28, 129). He completed the tenth grade, and has worked as a construction laborer, brick mason helper, and material handler. (Tr. 16, 177). The claimant alleges inability to work since June 16, 2009, due to eye stroke, back problems, Hepatitis C, and his right ankle. (Tr. 170).

## Procedural History

In July 2008, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Osly F. Deramus conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated March 22, 2011. (Tr. 12-22). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform the full range of medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c). (Tr. 14). The ALJ

concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled under Rule 203.12 of the Medical-Vocational Guidelines, *i. e.*, "the Grids," and because there was work in the regional and national economy that he could perform, *e. g.* dishwasher. (Tr. 21).

### Review

The claimant contends that the ALJ erred by (i) failing to find his monocular vision/left eye blindness, chronic obstructive pulmonary disease (COPD), compression fracture of T7, tinnitus, and Hepatitis C to be severe impairments; (ii) by failing to consider *all* of his impairments in assessing his RFC; and (iii) by relying on the Grids to determine he was not disabled. The undersigned Magistrate Judge finds the claimant's second contention persuasive, and the decision of the Commissioner should therefore be reversed.

The ALJ found that the claimant had the severe impairments of hypertension and osteoarthritis. (Tr. 14). The relevant medical evidence reflects that the claimant was blind in his left eye as the result of an eye stroke or occlusion that occurred prior to his onset date. (Tr. 263-264). A March 2009 X-ray of the claimant's left ankle found that the claimant's pain in his left ankle was "most compatible with posttraumatic remodeling and posttraumatic degenerative change." (Tr. 272). A similar X-ray of his right ankle revealed traumatic arthrosis with degenerative changes, and Dr. Howard Wilcox prescribed a lateral heel wedge to use in his right shoe. (Tr. 293-294). At a follow-up appointment, Dr. Wilcox noted that the claimant would likely require a fusion or possibly an osteotomy. (Tr. 300). The claimant went to Eastern Oklahoma Medical Center in

2010, complaining of continued and increasing pain in his right ankle. (Tr. 348-350). A May 25, 2010 X-ray revealed extensive chronic posttraumatic changes with osteoarthritic and DJD changes throughout the right ankle that were greatest at the tibiotalar joint. There were no bony abnormalities and no soft tissue swelling or joint effusion. (Tr. 352). The claimant continued to follow up with the Good Samaritan Clinic in Fort Smith, Arkansas, and notes reflect that he reported right ankle pain and requested medications for his arthritis. (Tr. 373-378).

At the administrative hearing, the claimant testified as to his impairments, that he originally injured his ankle in 1971 in a car accident, and that it has continued to bother him since that time, and that he had been diagnosed with arthritis in both ankles. (Tr. 38-39). As a result, he testified, he can only stand approximately thirty minutes, often alternates between sitting and lying down, and only sleeps a couple of hours at a time. (Tr. 39-41). He stated that he used to be a heavy smoker and has cut down quite a bit, but suffers from shortness of breath. (Tr. 42). He stated that he is very sensitive to the heat which had resulted in his former employer moving him to different jobs. (Tr. 43). He also noted his impairments of left eye blindness, high blood pressure, and Hepatitis C, which he said he believed contributed to his tiredness. (Tr. 44). He stated that he can only walk about forty feet before he becomes short of breath, and that he lives with his sister who takes care of the household chores and shopping. (Tr. 44-45). The claimant's sister also testified, stating that his pain and fatigue made him moody and irritable, that his COPD caused him to become winded easily, and that he seemed tired all day long. (Tr. 54-55).

In his written opinion, the ALJ summarized the claimant's testimony, as well as his sister's hearing testimony and the medical evidence. As to the claimant's left eye blindness, the ALJ noted that it had occurred in 2001 or 2002 and had not prevented him from working at substantial gainful activity levels before the alleged disability onset date, then concluded that it (along with his other non-severe impairments) causes no more than "minimal limitation in his ability to perform basic physical work-related activities. (Tr. 17). The ALJ then found that the claimant's hypertension was under good control and his osteoarthritis created no limitation in range of motion, and determined that the claimant was not disabled.

Although the ALJ found the claimant's hypertension and osteoarthrities to be severe impairments, he failed to include any limitations related to either of these impairments. (Tr. 15-20). In fact, the ALJ simply stated at step four that claimant's hypertension was under good control and the osteoarthritis had created no limitation in his range of motion, without indicating how either of these "severe" impairments would affect his ability to work. An explanation should be provided when, as here, an impairment found to be severe at step two is determined to be insignificant in later stages of the sequential evaluation. *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five.") [unpublished opinion]; *see also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the

RFC to perform a wide range of sedentary work.") [unpublished opinion]. The ALJ should have explained why the claimant's hypertension and osteoarthritis did not call for corresponding physical limitations. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir 1984).

The claimant also argues that the ALJ erred in failing to classify his monocular vision/left eye blindness, chronic obstructive pulmonary disease (COPD), compression fracture of T7, tinnitus, and Hepatitis C as severe impairments. Because the ALJ did find that the claimant had severe impairments, any failure to find the claimant's additional impairments severe at step two is considered harmless error because the ALJ would nevertheless be required to consider effect of these impairments and account for them in formulating the claimant's RFC at step four. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004) and 20 C.F.R. § 404.1523. *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant

has any severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. But here the error *was not* harmless, because the ALJ failed to properly account for, at the very least, the claimant's left eye blindness in assessing his RFC. *See, e. g., Grotendorst v. Astrue*, 370 Fed. Appx. 879, 884 (10th Cir. 2010) ("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Gtotendorst's mental impairments were not severe, she gave those impairments no further consideration. This was reversible error."). *See also Washington v. Shalala*, 37 F.3d 1437, 1439-1440 (10th Cir. 1994) ("Although the ALJ mentioned plaintiff's vision loss [blind in his right eye and had impaired vision in the left eye] when summarizing the medical evidence, he did not discuss how that loss impacted plaintiff's ability to do work. . . . We note at the outset that the ALJ failed to consider plaintiff's vision loss in conducting the step four inquiry. This failure, alone, would be grounds for reversal."); Soc. Sec. Rul. 83-14, 1983 WL 31254, at *5 ("Where a person has a visual impairment which is not of Listing severity but causes the person to be a hazard to self and others . . . will indicate to the decisionmaker that the remaining occupational base is significantly diminished for light work (and medium work as well).").

Because the ALJ failed to explain how the claimant's severe impairments of hypertension and osteoarthritis became so insignificant as to require no limitations in his RFC at step four, as well as failed to properly account for the claimant's non-severe impairments, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis. If such analysis on remand results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 5th day of September, 2013.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma